

Ethan Horwitz (EH-7152)
Karen R. Kowalski (KK-8381)
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone: (212) 556-2337
Facsimile: (212) 556-2222

Mike Stenglein
Texas State Bar No. 00791729
KING & SPALDING LLP
106 East Sixth Street, Suite 900
Austin, Texas 78701
Telephone: (512) 457-2000
Facsimile: (512) 457-2100

Attorneys for Alpharma Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ALPHARMA INC.** <br><br>            Plaintiff, <br><br>     - against - <br><br> **WYETH** <br><br>            Defendant. | Civil Action No. _____ <br><br> JURY TRIAL DEMANDED |

**ORIGINAL COMPLAINT**

Alpharma Inc. ("Alpharma" or "Plaintiff") files its Original Complaint as follows:

**SUMMARY OF COMPLAINT**

1.     This is a civil action for breach of contract, declaratory judgment and trademark infringement in which Plaintiff Alpharma, successor-in-interest to F. Hoffman-La Roche Ltd. and Hoffman-La Roche Inc. (together, "Roche"), seeks a permanent injunction and damages against Defendant Wyeth, f/k/a American Home Products Corporation.

2.    Alpharma is the exclusive owner of trademarks for AUREO®, AUREOMYCIN®, AUREOMIX®, and AUROFAC® in the United States and numerous foreign territories, and for AUREOMICINA in foreign territories outside the United States. Alpharma, as successor-in-interest to Roche, licensed the AUREO®, AUREOMYCIN®, AUREOMIX®, AUROFAC® and AUREOMICINA (the "AUREO Marks") to Wyeth through a Trademark License Agreement ("License Agreement") on July 31, 1995. A copy of the License Agreement is attached as Exhibit 1. The License Agreement granted Wyeth a royalty-free, exclusive worldwide limited license to use the AUREO Marks in connection with the manufacture, packaging, use and sale of Products. Products, as defined in the License Agreement, means products containing the compound chlortetracycline for use in human pharmaceuticals and non-feed additive dosage form animal pharmaceuticals (referred to herein as "Products").

3.    The License Agreement in turn obligated Wyeth to protect Alpharma's rights and the value of the AUREO Marks, and Wyeth further agreed to: (i) put the public on notice of who owned the marks by including a statement of Alpharma's trademark ownership on Wyeth's product packaging containing the AUREO Marks and (ii) never to assert any right of ownership in the AUREO Marks or confusingly similar marks anywhere in the world, or to take any action that may damage the marks. Wyeth has breached both of these material license provisions.

4.    Wyeth has failed to put the public on notice of trademark ownership. Wyeth, through its Fort Dodge Animal Health Division ("Fort Dodge"), is marketing, distributing, and selling Products bearing the AUREO Marks but without the required statement regarding Alpharma's ownership, throughout the United States and in numerous foreign countries. Alpharma sent two letters to Wyeth in February of 2007 and demanded that Wyeth, as

2

required under the License Agreement:  (i) properly mark packaging bearing the AUREO Marks with Alpharma's ownership statement; and (ii) recall all unsold or undistributed Products without the required ownership statement.  *See* Exhibit 2, February 6, 2007 Letter from Alpharma to Wyeth (without enclosures) and Exhibit 3, February 23, 2007 Letter from Alpharma to Wyeth. Instead of complying with its obligations under the License Agreement, Wyeth to date has not recalled any of its Products containing nonconforming packaging.  Not only that, Wyeth has continued to sell pharmaceutical products containing the AUREO Marks without the Alpharma ownership statement.

5.      Wyeth's misconduct has not been confined to a straightforward breach of the packaging provisions of the License Agreement.  Instead, Wyeth has attempted to appropriate several of the marks themselves.  Alpharma discovered that Wyeth has registered trademark ownership in several of the AUREO Marks abroad and has also registered trademark ownership of several confusingly similar marks in Portugal, India, and Taiwan.  Late last year, after uncovering evidence of the India and Taiwan applications and registrations through its own due diligence, Alpharma provided written notice to Wyeth regarding its breaches.  *See* Exhibit 4, September 24, 2007 Letter from Alpharma to Wyeth.  In its letter, Alpharma described Wyeth's material breaches of the License Agreement and demanded that Wyeth cure such breaches by assigning to Alpharma the applications and registrations in Taiwan and India for the AUREO Marks and the other confusingly similar marks.  Wyeth responded by denying any breach of the License Agreement, and by refusing to cure its material breaches by assigning the identified trademark rights in India and Taiwan to Alpharma.  *See* Exhibit 5, October 4, 2007 Letter from Wyeth to Alpharma.

6.    Wyeth has also materially breached Paragraph 4.3 of the License Agreement by filing an application to register and obtaining registrations in Portugal for AUREOMICINA, a trademark governed by the License Agreement.  In its March 11, 2008 letter, Wyeth "agreed to assign the Portugal trademarks to Alpharma," but has failed to do so.  A copy of the March 11, 2008 letter is attached as Exhibit 6.  Because Wyeth registered the AUREOMICINA trademark in Portugal and not assigned that registration to Alpharma, it has materially breached the License Agreement.

7.    Pursuant to Paragraph 7.2(a) of the License Agreement, Alpharma has the right to terminate the contract if Wyeth defaults by failing to cure a material breach within 90 days of written notification.  Alpharma notified Wyeth of its material breaches of the License Agreement in February and September 2007 and again in February 2008.  At such time, Alpharma expressly demanded that Wyeth cure its material breaches by:  (i) placing Alpharma's ownership statement on products bearing the AUREO Marks; and (ii) assigning Wyeth's applications and registrations for AUREO Marks and confusingly similar trademarks in Portugal, India, and Taiwan to Alpharma.  Wyeth has failed to cure its material breaches.  As a result, on July 10, 2008, in accordance with paragraph 7.2(a) of the License Agreement, Alpharma terminated the License Agreement by written notice to Wyeth.  Attached as Exhibit 7 is a copy of Alpharma's July 10, 2008 termination letter to Wyeth ("Termination Letter") (without exhibits).

8.    When Alpharma uncovered Wyeth's material breaches of the Trademark Agreement, it also exposed the fact that Wyeth, through its Fort Dodge division, had infringed Alpharma's A$^{®}$ trademark.  Wyeth's packaging bearing the AUREOMYCIN$^{®}$ trademark also prominently displays a mark identical to the A$^{®}$ trademark.  Alpharma is the exclusive owner in

4

the United States of Registration No. 0809161 for the A® trademark in connection with antibiotic preparation for use in animal and poultry feeds in the United States. Attached as Exhibit 8 are a true and correct copy of Registration No. 0809161 and a printout from the United States Patent and Trademark Office website evidencing Alpharma's ownership of this trademark. Alpharma did not license the A® trademark to Wyeth through the License Agreement, and has not otherwise authorized or consented to Wyeth's use of the A® trademark.

9.      Alpharma seeks declaratory judgment pursuant to 28 U.S.C. § 2201, declaring that the License Agreement has been terminated as of July 10, 2008, and further that Wyeth and its affiliates, subsidiaries, divisions (including Fort Dodge), and sub-licensees, must immediately cease and desist all use of the AUREO Marks and use of the A® trademark. Alpharma also seeks a permanent injunction prohibiting Wyeth, Fort Dodge and their affiliates from use of the AUREO Marks and use of the A® trademark. Alpharma further seeks damages for breach of contract, damages in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117), and such other relief, in law and equity, to which Alpharma is entitled under federal and state law.

## PARTIES, JURISDICTION, AND VENUE

10.     Alpharma is a corporation organized under the laws of the state of Delaware with its principal place of business at Grande Commons, 440 U.S. Highway 22 East, 3rd Floor, Bridgewater, New Jersey 08807. Alpharma is a global specialty pharmaceutical company and a major producer of pharmaceutical products for humans and animals. Alpharma is among the world's leading producers of several specialty pharmaceutical-grade bulk antibiotics and is internationally recognized as a leading provider of pharmaceutical products for animal health. Alpharma's animal health business is based on a portfolio of anti-infective animal health products that are added to the feed and water of livestock and poultry.

11.     Defendant Wyeth, f/k/a American Home Products Corporation, is a corporation organized under the laws of the State of Delaware, with its principal place of business at Five Giralda Farms, Madison, New Jersey 07940.   Wyeth is engaged in the development, manufacturing, distribution and sale of pharmaceutical products, including animal biological and pharmaceutical products.   Fort Dodge is the division of Wyeth responsible for Wyeth's animal biological and pharmaceutical business.

12.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1338 and 15 U.S.C. § 1121.  This Court also has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

13.     This Court has personal jurisdiction over Defendant because Wyeth regularly conducts business in every jurisdiction in the United States, including the state of New York.

14.     Venue is proper in the Federal District for the Southern District of New York pursuant to 28 U.S.C. § 1391.

## THE LICENSE AGREEMENT

15.     On or about July 31, 1995, Roche, the predecessor-in-interest to Alpharma, entered into a License Agreement with Wyeth (at the time, American Home Products).

16.     The License Agreement stipulates that it is made in the State of New York, and that "all incidents of this agreement shall be governed, construed and enforced in accordance with the laws of the State of New York." License Agreement ¶ 8.7.

17.     Alpharma succeeded to Roche's interest in the License Agreement pursuant to an Asset Purchase Agreement dated April 19, 2000 between Roche Vitamins, Inc.

and F. Hoffman-La Roche Ltd., whereby Alpharma purchased certain assets, including the intellectual property of the AUREO Marks.

18.    As set forth in the License Agreement, Alpharma as successor-in-interest to Roche (also referred to as "Licensor"), granted Wyeth an exclusive, royalty free worldwide limited license to use the trademarks AUREO®, AUREOMYCIN®, AUREOMICINA, AUREOMIX® and AUROFAC® in connection with the manufacture, packaging, use and sale of products containing the compound chlortetracycline for use in human pharmaceuticals and non-feed additive dosage form animal pharmaceuticals.  License Agreement ¶¶ 1.4, 1.5 and Article II.

19.    The License Agreement contains certain prohibitions and requirements restricting Wyeth's use of the AUREO Marks, as described more fully in the paragraphs below. The License Agreement also gives Alpharma the right to terminate the agreement for failure to comply with these prohibitions and requirements.

20.    Under Paragraph 7.2, the Licensor can terminate the License Agreement by written notice under the following circumstances:  if Wyeth commits a material breach of the License Agreement and fails to cure such breach within ninety days after the Licensor provides written notification of the breach, then the Licensor can, by written notice, terminate the License Agreement.  Specifically, paragraph 7.2(a) of the License Agreement provides in pertinent part that:

> If either party shall have committed or suffered to be committed a material breach of this Agreement, and such default is not cured within ninety (90) days after delivery of a written notice to the defaulting party specifying such default, following which period the non-defaulting party shall have the option to terminate the Agreement forthwith by written notice.

I. **WYETH BREACHED PARAGRAPH 4.6 OF THE LICENSE AGREEMENT**

21.    Between 1995 and 2007, Wyeth materially breached the License Agreement.  The first breach Alpharma discovered was Wyeth's failure to include Alpharma's ownership statement on packaging with the AUREO Marks, a violation of paragraph 4.6 of the License Agreement.

22.    The License Agreement requires that Wyeth, as Licensee, state on the packaging of all products containing the AUREO Marks that the AUREO Marks belong to the Licensor.  Specifically, paragraph 4.6 of the License Agreement provides that:

> Licensee shall state on the packaging of the Products that the Trademark is owned by F. Hoffman-La Roche Ltd, Basel, Switzerland, for Products outside the U.S., or Hoffmann-La Roche Inc., New Jersey, for Products inside the U.S., and that the respective trademark belongs to Licensor.

23.    Alpharma discovered that Wyeth's Fort Dodge division was selling products containing the AUREOMYCIN® trademark without any indication on the bag that the trademark was owned by Alpharma, or its predecessor-in-interest Roche.  The ownership statement is significant: although Alpharma licensed the AUREO Marks to Wyeth for use in *non-feed* additive dosage form animal pharmaceutical products containing the chemical compound chlortetracycline, Alpharma also manufactures, distributes and sells products containing chemical compound chlortetracycline in *medicated feed* additives under several of the AUREO Marks.  Thus, requiring indicia of Alpharma's ownership on all AUREO Mark packaging is an important component of Alpharma's brand identity.  The ownership statement therefore constitutes a material requirement under the License Agreement.

24.    Upon learning that Wyeth's AUREOMYCIN® packaging did not contain a Licensor ownership statement, Alpharma mailed Wyeth a letter on or about February 6, 2007, notifying Wyeth that it was in violation of the License Agreement.  In the letter, Alpharma

8

enclosed a sample of the AUREOMYCIN® packaging sold by Wyeth and explained that the packing "makes no reference to Licensor, or to its successor Alpharma." *See* Exhibit 2, February 6, 2007 Letter. Alpharma's letter further states that Alpharma, having stepped into Roche's shoes, "request[s] that Wyeth amend its packing to make clear that Alpharma is the owner of the Trademarks. Please confirm within fourteen (14) days from the date of this letter that Wyeth will undertake the requested amendment to its packing bearing the Trademarks and that it will amend such packing within ninety (90) days from the date of this letter."

25.     Wyeth responded on February 9, 2007 via email and asked that Alpharma "provide us with the exact text Alpharma would like" in the ownership statement. Attached as Exhibit 9 is a copy of the February 9, 2007 email. Alpharma responded by letter dated February 23, 2007. Attached as Exhibit 3 is a copy of the February 23, 2007 letter. In the February 23rd letter Alpharma reiterated its demands, and in particular required that Wyeth immediately mark all packing of products bearing the AUREOMYCIN® trademark with the exact text of the following statement: "AUREOMYCIN is a registered trademark owned by Alpharma Inc. and used under license by Fort Dodge." Alpharma also demanded that Wyeth recall all products covered by the License Agreement that were sold or distributed without a statement of Alpharma's trademark ownership.

26.     Furthermore, Alpharma's February 23rd letter notified Wyeth that its failure to place Alpharma's trademark ownership statement on the AUREOMYCIN® Product packaging constituted a material breach of the License Agreement which, if not cured within ninety days, would give Alpharma the option to terminate the License Agreement pursuant to paragraph 7.2(a).

## II.    WYETH BREACHED PARAGRAPHS 4.3 AND 4.4 OF THE LICENSE AGREEMENT

27.    Soon after Alpharma discovered that Wyeth was selling Product packaging without a proper trademark ownership statement, Alpharma uncovered yet another violation of the License Agreement. Wyeth, through its subsidiary Wyeth Holdings Corporation, had on May 2, 2003 applied for, and subsequently received, registrations for the following trademarks, in various veterinary and animal feed additive uses in Taiwan: AUREO S®, AUREO S.P.®, AUREO S.P. 250® & Design, AUREO S.P. 500®, and AUREO STP 500®.

28.    In addition, Wyeth, again through Wyeth Holding Corporation, further violated the License Agreement on June 6, 2005 by registering AUREOMICINA in Portugal, and on September 30, 2005 by applying to register the AUROFAC® mark in India for use in veterinary products and preparations.

29.    The License Agreement prohibits Licensee Wyeth from taking any action to destroy, damage or impair the ownership rights of Licensor in the Trademark. Specifically, paragraph 4.3 of the License agreement provides that:

> Licensee agrees not to claim or to assert any right of ownership in or to the Trademarks or the goodwill associated therewith and shall take no action which may destroy, damage or impair in any way the ownership or rights of Licensor in and to the Trademarks. *Licensee shall not register anywhere in the world in its own name, or on behalf of any other person or entity, any trademark, trade dress, brands, labeling, designs or other indicia of ownership identical to, or confusingly similar to, the Trademarks,* and shall not associate the Trademarks with any articles other than the Products and shall, at the request and expense of Licensor do all such acts and things and execute all such documents as Licensor shall in its reasonable discretion consider necessary or proper to register the Trademarks in any country. Should usage of the Trademarks in any country vest title thereto in Licensee, then Licensee shall at Licensor's expense immediately assign and transfer such title to Licensor. (emphasis added)

30.    The License Agreement further prohibits Wyeth's affiliates from taking any action to destroy, damage or impair the ownership rights of Licensor in the Trademark. Specifically, paragraph 4.4 of the License Agreement provides in pertinent part that:

> Licensee and its Affiliates may advertise, promote, market and sell Products under any trademark(s), tradename(s) and trade dress of their own choosing in addition to the Trademarks, so long as such trademark(s), tradename(s), or trade dress are not confusingly similar to the trademark(s), tradename(s) or trade dress of Licensor.  Licensor shall have no right, title or interest whatsoever in or to any such trademark(s), tradename(s) or trade dress, provided such trademark(s), tradename(s) or trade dress *shall not violate the provisions of Article 4.3.* (emphasis added).

31.    Affiliates is defined in paragraph 1.1 of License Agreement to include "any Person directly or indirectly controlling, controlled by, or under common control with such other Person."  Wyeth Holding Corporation is a subsidiary of Wyeth and is directly or indirectly controlled by Wyeth.

32.    On September 24, 2007, after learning that Wyeth, through Wyeth Holding Corporation, had violated the License Agreement by applying for and registering trademark and designs identical or confusingly similar to the AUREO Marks in India and Taiwan, Alpharma sent Wyeth another letter via certified mail, return receipt requested.  In its September 24th letter Alpharma demanded that Wyeth assign Wyeth Holding Corporation's applications and registrations in Taiwan and India to Alpharma for the following trademarks pursuant to paragraph 4.3 of the Trademark License Agreement: AUREO S®, AUREO S.P.®, AUREO S.P. 250® & Design, AUREO S.P. 500®, AUREO STP 500®, and AUROFAC®. *See* Exhibit 4.  Alpharma included in the September 24th letter assignments, prepared at Alpharma's expense, for Wyeth to execute, transferring the applications and registrations at issue to Alpharma. Exhibit 4.

11

33.    Wyeth has also materially breached Paragraph 4.3 of the License Agreement by filing an application to register and obtaining registrations in Portugal for AUREOMICINA, a trademark governed by the License Agreement.  In its March 11, 2008 letter, Wyeth "agreed to assign the Portugal trademarks to Alpharma," but has failed to do so.  A copy of the March 11, 2008 letter is attached as Exhibit 6.  Because Wyeth registered the AUREOMICINA trademark in Portugal and not assigned that registration to Alpharma, it has materially breached the License Agreement.

III.    WYETH FAILED TO CURE ITS MATERIAL BREACHES, AND ALPHARMA TERMINATED THE LICENSE AGREEMENT

34.    Despite Alpharma's explicit notification that Wyeth's actions and failures to act constituted material breaches of the License Agreement, Wyeth blatantly disregarded its contractual obligations and refused to cure those breaches.  To date, Wyeth continues to ignore its obligations by distributing and selling packaging with the AUREO Marks that do not bear Alpharma's ownership statement.

35.    Furthermore, Wyeth has repeatedly and insistently refused to cure its material breaches of paragraphs 4.3 and 4.4 of the License Agreement by assigning to Alpharma the applications and registrations for trademark and designs identical or confusingly similar to the AUREO Marks in Portugal, India and Taiwan.  To date, Wyeth has failed to assign to Alpharma the following trademark applications and registrations held by Wyeth Holding Corporation:  AUREO S®, AUREO S.P.®, AUREO S.P. 250® & Design, AUREO S.P. 500®, and AUREO STP 500® in Taiwan; AUROFAC® in India; and AUREOMICINA in Portugal.

36.    Alpharma terminated the License Agreement due to Wyeth's material breaches of the License Agreement on July 11, 2008.  *See* Exhibit 7.

12

## WYETH'S INFRINGEMENT OF ALPHARMA'S A® MARK

**I.    ALPHARMA'S OWNERSHIP AND USE OF THE A® MARK**

37.    Alpharma is the exclusive owner in the United States of Registration No. 0809161 for the inherently distinctive three-dimensional A® trademark in connection with antibiotic preparation for use in animal and poultry feeds in the United States. *See* Exhibit 8. Registration No. 0809161 remains in full force and effect. Alpharma's registered rights in the A® trademark is referred to herein as the A® Mark.

38.    Alpharma has given notice to the public of its registration of the A® Mark as provided by 15 U.S.C. § 1111.

39.    For more than twelve years, Alpharma has built and cultivated a reputation for meeting and exceeding stringent regulatory and quality standards to build brand loyalty and ensure customer satisfaction with its animal health products.

40.    Alpharma has invested substantial effort in cultivating goodwill in its animal health trademarks and tradenames, including the A® Mark. The A® Mark has been in use since at least 1964, by Alpharma and its predecessors-in-interest, and has become a famous and widely-recognized trademark within the animal health industry. Alpharma uses the A® Mark in conjunction with the brand name AUREOMYCIN® for feed-grade antibiotics containing chlortetracycline used for poultry, cattle and swine. Alpharma uses the A® Mark in interstate commerce.

41.    As noted above, the License Agreement only granted Wyeth a license to use the AUREOMYCIN® trademark on human pharmaceuticals and *non-feed* additive dosage form animal pharmaceuticals and vaccines, and Alpharma reserved the AUREOMYCIN® trademark for its own usage in *medicated feed* products. Alpharma does in fact use the AUREOMYCIN® trademark on its own medicated feed products.

13

42.    Alpharma's AUREOMYCIN® products bearing the A® Mark are feed-grade antibiotics containing chlortetracycline, and are used to prevent and treat diseases to maintain health and improve feed efficiency in poultry, cattle and swine.  The class of products containing chlortetracycline are highly valued by Alpharma and account for a significant portion of the company's total revenue.  The class of products containing chlortetracycline was approximately 25.8% of Alpharma's Animal Health Division's total revenues in 2007.

43.    The License Agreement granted Wyeth the right to use *only* the AUREO Marks as specified in the License Agreement -- the A® Mark was not included in the license. Alpharma did not, and has not licensed the A® Mark to Wyeth through the License Agreement, and has not otherwise authorized or consented to Wyeth's use of the A® Mark.

## II.    WYETH'S MISUSE OF THE A® MARK

44.    In early 2007, when Alpharma uncovered Wyeth's material breaches of the Trademark Agreement, it also exposed the fact that Wyeth, through its Fort Dodge division, was offering for sale water soluble antibiotic powder products bearing both the licensed AUREOMYCIN® trademark and an unlicensed, unauthorized usage of the A® Mark.  Attached as Exhibit 10 is a photograph of an AUREOMYCIN® water soluble Product bag bearing a large A® Mark, sold by Wyeth's Fort Dodge division.  Attached as Exhibit 11 is a copy of the packaging of AUREOMYCIN® feed product bearing the A® Mark sold by Alpharma. Alpharma's A® Mark is reproduced below next to the A® Mark appearing on the Fort Dodge division Product:

Alpharma's federally registered A® Mark:    Wyeth's Infringing Mark (as displayed on its packaging):

    

45.    Wyeth, through Fort Dodge, sells bags bearing both the AUREOMYCIN® trademark and an unlicensed, unauthorized usage of the A® Mark. Wyeth sells these bags in interstate commerce through veterinary pharmacies, feed stores, and on-line pharmacies. In addition, Wyeth, through Fort Dodge, displays the AUREOMYCIN® bags using the A® Mark on the Fort Dodge website.

46.    On or around May 2006, after learning of Wyeth's infringing use of the A® Mark during its investigation of Wyeth's violations of the License Agreement, Alpharma communicated to Wyeth a demand that Wyeth cease using the A® Mark. Despite being notified of Alpharma's A® Mark and its infringing use of the mark, Wyeth continued (and continues) to use the A® Mark in violation of Alpharma's trademark.

## COUNT I

### (Breach of Contract)

47.    Plaintiff Alpharma repeats each allegation set forth in paragraphs 1 through 46 as if fully set forth herein.

48.    Alpharma, as successor-in-interest to Roche, and Wyeth, formerly known as American Home Products Corporation, entered into the Trademark License Agreement, effective as of July 31, 1995, whereby Alpharma granted Wyeth an exclusive limited worldwide license to use the AUREO Marks in connection with the manufacture, packaging, use and sale of the Products.

15

49.    The License Agreement is a valid contract, binding on both parties.

50.    The License Agreement required Wyeth to place Alpharma's ownership statement on all packing bearing the AUREO marks.  The License Agreement further prohibited Wyeth or Wyeth Holdings Corporation from applying for, registering or maintaining registrations of trademark and designs identical to or confusingly similar to the AUREO Marks.

51.    Alpharma fully performed its obligations under the License Agreement.

52.    Wyeth materially breached the License Agreement by: (i) selling packing bearing the AUREO Marks without Alpharma's ownership statement and (ii) by applying for and registering trademarks and designs identical to or confusingly similar to the AUREO Marks.

53.    Wyeth's breach caused injury to Alpharma, resulting in significant damages to Alpharma.

54.    All conditions precedent to Alpharma's claims for relief have been performed or have occurred.

## COUNT II

### (Declaratory Judgment)

55.    Plaintiff Alpharma repeats each allegation set forth in paragraphs 1 through 54 as if fully set forth herein.

56.    There exists an actual and justiciable controversy between Alpharma and Wyeth, capable of and ripe for determination by declaratory judgment by this Court as to whether Alpharma has terminated the License Agreement, and whether Wyeth can continue its use of the AUREO Marks.

57.    Alpharma seeks a declaration from this Court under the Federal Declaratory Judgment Act, 29 U.S.C. §§ 2201-2202, decreeing that: (i) Alpharma fully performed its obligations under the License Agreement; (ii) Wyeth materially breached the

16

License Agreement; (iii) Alpharma properly terminated the License Agreement in its entirety, including Exhibit 1 thereto, pursuant to its terms; (iv) as of July 10, 2008, Wyeth has no right to use any of the AUREO Marks in connection with the manufacture, packaging, use and sale of "Products" (or any other reason) as defined in the License Agreement; (v) as of July 10, 2008, Wyeth has no right to sublicense the AUREO Marks; and (vi) Wyeth has infringed the A$^{®}$ Mark.

58.    A declaratory judgment setting forth the respective rights of the parties on this issue is necessary to resolve this controversy.

## COUNT III

### (Trademark Infringement Under 15 U.S.C. § 1114)

59.    Plaintiff Alpharma repeats each allegation set forth in paragraphs 1 through 58 as if fully set forth herein.

60.    Notwithstanding Alpharma's federal registration of the A$^{®}$ Mark, with notice of Alpharma's federal registration rights, and without authorization by Alpharma, Wyeth has in the past, and is continuing to distribute, offer to sell, and sell in interstate commerce goods bearing a mark identical to the A$^{®}$ Mark that are related to the goods provided by Alpharma.

61.    The sale by Wyeth of its water soluble powder bag form product in the animal health market with the A$^{®}$ Mark is likely to cause confusion or mistake or deception to purchasers as to the source of origin of the goods. To date, Wyeth's infringing bag bearing the A$^{®}$ Mark also bears the licensed AUREOMYCIN$^{®}$ trademark, which is further likely to cause confusion among purchasers.

62.    Both Wyeth and Alpharma's products bear the A$^{®}$ Mark and are animal health products sold in bag form, bearing the trademark AUREOMYCIN$^{®}$. In addition, Alpharma's products bearing the A$^{®}$ Mark and Wyeth's products bearing the A$^{®}$ Mark are sold to

similar classes of consumers and in similar channels of trade through veterinary pharmacies, feed stores, and on-line pharmacies.

63.    Wyeth's conduct causes the likelihood of confusion, mistake, or deception as to whether its products originate with or are sponsored, affiliated, or approved by Alpharma. Furthermore, Alpharma has no control over the customer service associated with those products promoted, sold, or distributed by Wyeth.

64.    Alpharma further has no control over the nature and quality of the water soluble antibiotic powder used by Wyeth.  Although AUREOMYCIN® was licensed to Wyeth for limited use, Alpharma terminated the License Agreement according to its terms effective July 10, 2008.  Alpharma's goodwill with respect to the A® Mark will suffer for lack of quality control, and will be solely at the mercy of Wyeth.

65.    Alpharma's goodwill in the A® Mark is of enormous value, and Alpharma has suffered and will continue to suffer harm should infringement be allowed to continue to the detriment of its trade reputation and goodwill.

66.    On information and belief, the aforementioned acts of infringement have been and will continue to be intentional, willful, deliberate, and malicious, and have been committed with actual and constructive knowledge of the A® Mark.

67.    Wyeth's aforementioned acts of infringement have caused damages and will continue to cause damages in an amount to be determined at trial.

68.    The infringement by Wyeth will continue unless enjoined by this court.

69.    Alpharma has no adequate remedy at law.

18

## COUNT IV

### (False Designation of Origin Under 15 U.S.C. § 1125)

70.    Plaintiff Alpharma repeats each allegation set forth in paragraphs 1 through 69 as if fully set forth herein.

71.    Wyeth's use of the A® Mark as set forth above constitutes a false designation of origin which is likely to deceive and has deceived customers and prospective customers into believing that Wyeth's water soluble antibiotic powder product is sponsored, affiliated, or approved by Alpharma, and, as a consequence, is likely to divert and has diverted customers away from Alpharma.  Alpharma has suffered and will continue to suffer irreparable harm should Wyeth be allowed to continue using the A® Mark.

72.    As set forth above, Alpharma has no control over the nature and quality of Wyeth's products bearing the A® Mark manufactured and sold by Wyeth.  Any failure, neglect or default by Wyeth will reflect adversely on Alpharma as the believed source of the product, hampering Alpharma's efforts to protect its reputation for high quality products, resulting in loss of sales and the considerable expenditures to promote its products under the A® Mark, all to the irreparable harm of Alpharma.

73.    Wyeth's aforementioned acts have caused damages and will continue to cause damages in an amount to be determined at trial.

74.    Wyeth's false designation of origin will continue unless enjoined by this court.

75.    Alpharma has no adequate remedy at law.

19

## COUNT V

### (New York General Business Law § 349)

76.     Plaintiff Alpharma repeats each allegation set forth in paragraphs 1 through 75 as if fully set forth herein.

77.     Wyeth's conduct constitutes consumer-oriented deceptive acts and practices that are impliedly false and/or misleading in material respects, and harmful to the public at large.

78.     Wyeth's illegal acts have caused damages and will continue to cause damages in an amount to be determined at trial.

## COUNT VI

### (Common Law Unfair Competition)

79.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 78 as if fully set forth herein.

83.     Wyeth's conduct constitutes unfair competition under the common law of the State of New York.

80.     Wyeth's unlawful conduct has caused damage to Alpharma and will continue to damage Alpharma unless enjoined by this court.

81.     Alpharma has no adequate remedy at law.

### ATTORNEYS' FEES

82.     Because this qualifies as an exceptional case under 15 U.S.C. § 1117(a), Alpharma requests an award of attorneys' fees in prosecuting its claims.

### PRAYER FOR RELIEF

Alpharma requests that the Court:

(a)     Enter an Order in respect of Count II, declaring and finding that:

(i)    Alpharma fully performed its obligations under the License Agreement;

(ii)    Wyeth materially breached the License Agreement;

(iii)    Alpharma properly terminated the License Agreement in its entirety, including Exhibit 1 thereto, pursuant to its terms;

(iv)    as of July 10, 2008, Wyeth has no right to use any of the AUREO Marks in connection with the manufacture, packaging, use and sale of "Products" as defined in the License Agreement;

(v)    as of July 10, 2008, Wyeth has no right to sublicense the AUREO Marks; and

(vi)    Wyeth has infringed the A$^{®}$ trademark.

(b)    Award damages for breach of contract;

(c)    Order an accounting of Wyeth's profits and a damage award of treble those profits pursuant to 15 U.S.C. § 1117(a) because of Wyeth's willful acts described above in disregard of Alpharma's rights;

(d)    Award Alpharma its costs in this action, including reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a);

(e)    Find that Wyeth, its officers, agents, affiliates, subsidiaries, employees, attorneys and representatives and all those in privity or acting in concert with Wyeth, and each and all of them, be permanently enjoined and restrained from directly or indirectly from:

(i)    using the AUREO Marks or any other name or mark confusingly similar to the AUREO Marks, alone or in combination with other words, names, styles, titles or marks (hereinafter referred to as "using the AUREO Marks");

(ii)    using the A$^{®}$ Mark or any other name or mark confusingly similar to the A$^{®}$ Mark, alone or in combination with other words, names, styles, titles or marks (hereinafter referred to as "using the A$^{®}$ Mark");

(iii)    holding themselves out as the owners of, or otherwise authorized to use the AUREO Marks or the A$^{®}$ Mark;

(iv)    using any false designation of origin or false description, or performing any act which is likely to lead members of the trade or public to believe that any infringing product manufactured, distributed or sold by Wyeth is in any manner associated or

connected with Alpharma, or is sold, manufactured, licensed, sponsored, approved of or authorized by Alpharma;

(v)     using any words, names, styles, titles or marks which create a likelihood of injury to the business reputation of Alpharma, or a likelihood of dilution of Alpharma's AUREO or A® Mark and the goodwill associated therewith;

(vi)    using any trade practices whatsoever including those complained of herein, which tend to unfairly compete with or injure Alpharma's business and the goodwill appertaining thereto.

(f)     Direct Wyeth to recall from all distributors, retailers or other recipients any and all products and packaging sold or distributed by Wyeth using the A® Mark or using the AUREO Marks, and, upon such recall, to deliver such goods to Alpharma's counsel for destruction at Wyeth's costs;

(g)     Direct that Wyeth immediately cancel all advertising regardless of medium on animal health products using the A® Mark or using the AUREO Marks;

(h)     Direct that Wyeth assign to Alpharma registrations and applications by Wyeth, its subsidiaries and affiliates, including Wyeth Holding Corporation, for the AUREO Marks and confusingly similar trademarks worldwide; and

(i)     Award Alpharma such other and further relief as the court may deem just and proper.

Dated: July 11, 2008

KING & SPALDING LLP

Respectfully submitted,

Ethan Horwitz (EH-7152)
Karen R. Kowalski (KK-8381)
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone: (212) 556-2337
Facsimile: (212) 556-2222

Mike Stenglein
Texas State Bar No. 00791729
KING & SPALDING LLP
106 East Sixth Street, Suite 900
Austin, Texas 78701
Telephone: (512) 322-3985
Facsimile: (512) 322-3961

Attorneys for Plaintiff Alpharma Inc.

# Exhibit 1

RWA 072895

## TRADEMARK LICENSE AGREEMENT

THIS AGREEMENT is signed this 31st day of July , 1995, and effective as of the Effective Date as defined below, by and between AMERICAN HOME PRODUCTS CORPORATION, a Delaware corporation (Licensee), and F.HOFFMANN-LA ROCHE AG ("Roche Basel"), a Swiss corporation, and HOFFMANN-LA ROCHE INC. ("Roche Nutley"), a New Jersey corporation (collectively, Licensor).

A.    Licensor is the owner of certain trademarks for products containing the compound chlortetracycline.

B.    Licensee desires to make use of certain trademarks owned by Licensor in connection with the manufacture, use and sale of the products as defined below, and Licensor is willing to license such trademarks to Licensee for such purposes, subject to the terms and conditions hereinafter set forth.

### ARTICLE I
### DEFINITIONS

Whenever used in this Agreement, unless otherwise clearly indicated by the context, the terms defined below shall have the indicated meanings:

1.1  "Affiliate" means, with respect to any Person, any Person directly or indirectly controlling, controlled by, or under common control with such other Person, provided, however, that the following shall not be an Affiliate for purposes of this Agreement for so long as there are material restrictions on the ability to control such Person (i) with respect to Licensor, Genentech, Inc., with its principal office at 460 Point San Bruno Boulevard, South

- 2 -

San Francisco, California 94080 and (ii) with respect to Licensee, Genetics Institute, Inc., with its principal office at 87 Cambridge Park Drive, Cambridge, Massachusetts 02140, Immunex Corporation, with its principal office at 51 University Street, Seattle, Washington 98101, and Wyeth-Eisai Co., Ltd., with its principal office at Kowa Building, #6, 15-21 Nishi Azabu 4-chome, Minato-ku, Tokyo, Japan.

1.2  "Effective Date" of this Agreement shall mean the date first written above.

1.3  "Products" shall mean products containing the compound chlortetracycline for use in Specialty Health Products and human pharmaceuticals.

1.4  "Specialty Health Products" shall mean non-feed additive dosage form animal pharmaceuticals and vaccines.

1.5  "Territory" shall mean the world.

1.6  "Trademarks" shall mean those trademarks which are applied for, owned and/or registered in the name of Licensor listed in Schedule A.

## ARTICLE II
### GRANT OF RIGHTS

For good and adequate consideration, the receipt of which is hereby acknowledged, as of the Effective Date, Licensor, Roche Basel for the Territory outside the U.S. and Roche Nutley for the U.S., grants to Licensee an exclusive, royalty free, limited license, without the right to grant sublicenses, to use the Trademarks in connection with the manufacture, packaging, use and sale of Products in the Territory.



- 3 -

## ARTICLE III
## QUALITY CONTROL

3.1  Licensor has evaluated Licensee's current Products and determined that they are of a quality that justifies this grant of license. Licensee will not permit the quality of its Products to deteriorate so as to adversely affect the good will associated with the Trademarks.

3.2  Licensee shall, upon request of Licensor, from time to time furnish Licensor, without charge, specifications and samples of Products for quality review by Licensor.

3.3  Licensor or an authorized representative thereof shall have the right, at all reasonable times, to inspect the finished goods in relation to which the Trademarks are to be used, as part of appropriate quality control. Licensor, or an authorized representative thereof approved by Licensee, shall have the right, upon reasonable prior notice and during usual business hours, to inspect for quality review those areas of Licensee's facilities used for the manufacture of Products.

## ARTICLE IV
## USE OF TRADEMARKS

4.1  Licensee shall use the Trademarks only in connection with the Products and in the manner and style which shall have the prior approval of Licensor in writing; provided, however, that the manner and style in which the Trademarks are used on the Effective Date shall be deemed to have Licensor's approval. If a substantial change in such usage from that initially approved is proposed, such usage shall be submitted to Licensor for approval before commercial use thereof. Such approval shall not be unreasonably withheld or delayed. With respect to any written approval requested of



- 4 -

Licensor under this paragraph, failure of Licensor to respond to a written request for approval within thirty (30) business days of the request shall be deemed to constitute approval.

4.2  If Licensor deems it necessary to record this Agreement with the authorities of any jurisdiction in the Territory, Licensee agrees to execute any applications or documentation necessary or desirable, in Licensor's reasonable judgment, to complete such recordal.  All reasonable expenses incurred by Licensee in connection with such recordal shall be reimbursed to Licensee by Licensor.

4.3  Licensee agrees not to claim or to assert any right of ownership in or to the Trademarks or the goodwill associated therewith and shall take no action which may destroy, damage or impair in any way the ownership or rights of Licensor in and to the Trademarks.  Licensee shall not register anywhere in the world in its own name, or on behalf of any other person or entity, any trademark, trade dress, brands, labelling, designs or other indicia of ownership identical to, or confusingly similar to, the Trademarks, and shall not associate the Trademarks with any articles other than the Products and shall, at the request and expense of Licensor do all such acts and things and execute all such documents as Licensor shall in its reasonable discretion consider necessary or proper to register the Trademarks in any country.  Should usage of the Trademarks in any country vest title thereto in Licensee, then Licensee shall at Licensor's expense immediately assign and transfer such title to Licensor.

4.4  Licensee and its Affiliates may advertise, promote, market and sell Products under any trademark(s), tradename(s) and trade dress of their own choosing in addition to the Trademarks, so long as such trademark(s), tradename(s) or trade dress are not confusingly similar to the trademark(s), tradename(s) or trade



- 5 -

dress of Licensor. Licensor shall have no right, title or interest whatsoever in or to any such trademark(s), tradename(s) or trade dress, provided such trademark(s), tradename(s) or trade dress shall not violate the provisions of Article 4.3. So long as Licensee or its Affiliates shall have any interest in and to any such trademark(s), tradename(s) or trade dress, whether as proprietor, owner, licensee, or licensor in any country of the world, Licensor shall not adopt, use, apply for registration, register, own or acquire any such trademark(s), tradename(s) or trade dress, or any mark, name or trade dress confusingly similar thereto, in any state or country of the world.

4.5  Licensor and its Affiliates and Licensee and its Affiliates shall enter into the co-existence agreement in the form attached hereto as Exhibit 1.

4.6  Licensee shall state on the packing of the Products that the Trademark is owned by F.Hoffmann-La Roche Ltd, Basel, Switzerland, for Products outside the U.S., or Hoffmann-La Roche Inc., New Jersey, for Products inside the U.S., and that the respective trademark belongs to Licensor.

4.7  Neither this Agreement, nor Licensor's activity hereunder establish or imply any transfer or cession whatsoever of the patents, know-how, manufacturing processes, secrets, good-will, trademarks, or other industrial property rights relating to the Products from Licensor to Licensee. Licensee has no permit for and agrees not to use in any manner or form the word "Roche", the Roche logo, the housemark Roche or the hexagon used by Roche as well as the word, housemark and logo "Syntex", or any confusingly similar word or symbol.



- 6 -

## ARTICLE V
## INFRINGEMENT OF TRADEMARKS

5.1  In the event either Licensee or Licensor learn that any Trademark pertaining to Product(s) is being infringed in the Territory by any third party, it shall promptly notify the other of such infringement.   Licensor shall have the right to act to terminate any such third-party infringement, including without limitation prosecuting a lawsuit or other legal proceeding, at Licensor's own expense; and Licensor may retain any recovery it may receive as a result of its actions to terminate such infringement. Licensee shall fully cooperate with Licensor in any action Licensor takes to terminate infringement and shall be reimbursed by Licensor for all reasonable expenses incurred in connection therewith.

5.2  If Licensor fails to take any action within sixty (60) days after Licensee's request, Licensee shall have the right to act as it sees fit to terminate the infringement, including without limitation prosecuting a lawsuit or other legal proceeding, at Licensee's own expense; and Licensee may retain any recovery it may receive as a result of its actions to terminate such infringement. Licensor shall fully cooperate with Licensee in any such action taken by Licensee, including without limitation agreeing to be joined as party plaintiff and approving any reasonable settlement agreement achieved by Licensee, and shall be reimbursed by Licensee for all reasonable expenses incurred in connection therewith.

## ARTICLE VI
## WARRANTIES AND INDEMNITIES

6.1  Licensor warrants that it is the owner of the Trademark, as shown in Schedule A.  Licensor neither makes any representation about the exclusivity of the Trademarks nor does it represent that it will defend Licensee in any infringement claims.

- 7 -

6.2 Licensor agrees to indemnify and hold Licensee and its Affiliates harmless against any action, claims, damages, injuries, losses, costs and expenses (including reasonable attorney's fees and disbursements) arising from or claimed to arise from any material breach by Licensor of its obligations or warranties under this Agreement.

6.3 Licensee agrees that during the term of this Agreement Licensee shall be responsible for complying with and assuring compliance with all laws and regulations applicable to its manufacture, packaging, labelling, government registration, transportation, performance or use of Products.

6.4 Licensee agrees to indemnify and hold Licensor and its Affiliates harmless against any action, claims, damages, injuries, losses, costs and expenses (including reasonable attorney's fees and disbursements) arising from or claimed to arise from (i) the manufacture, packaging, labelling, government registration, transportation, sale, performance or use of the Products, and (ii) any material breach by Licensee of its obligations or warranties under this Agreement.

6.5 A party seeking indemnification hereunder agrees to give prompt written notice to the indemnifying party after the receipt of any written notice of the commencement of any action, suit, proceeding or investigation or threat thereof made in writing for which such party will claim indemnification pursuant to this Agreement.

6.6 The provisions and obligations of this Article VI shall survive expiration or any termination of this Agreement.



- 8 -

## ARTICLE VII
### TERM AND TERMINATION

7.1  This Agreement shall become effective upon the Effective Date and shall remain in full force and effect so long as Licensee is making, using or selling Products using the Trademarks, unless earlier terminated in accordance with any of the provisions of this Article VII.

7.2  This Agreement may be sooner terminated without prejudice to any rights and claims that either party hereto may have against the other party, upon the occurrence of either of the following events:

    (a)   if either party shall have committed or suffered to be committed a material breach of this Agreement, and such default is not cured within ninety (90) days after delivery of a written notice to the defaulting party specifying such default, following which period the non-defaulting party shall have the option to terminate the Agreement forthwith by written notice.

    (b)   if either party shall (i) become insolvent or stop paying its obligations in the ordinary course of business, (ii) make an assignment for the benefit of creditors, (iii) file or become subject to a filing for reorganization, receivership or bankruptcy under the insolvency or bankruptcy laws of any country having jurisdiction over such party (as they are now or may be hereafter constituted, including a declaration of insolvency), provided that if such filing is made without the acquiescence of the party subject to such filing, such filing remains undismissed for

- 9 -

sixty (60) days, or (iv) be dissolved, liquidated or wound-up or otherwise cease or be compelled to cease business, then in any such event, this Agreement shall automatically terminate.

7.3 Upon the expiration or early termination of this Agreement, Licensee shall cease and discontinue, effective upon the date of such expiration or early termination, all use of the Trademarks in the Territory and Licensor may immediately take all necessary actions to cancel the entry of Licensee as a registered user.

7.4 Licensor may terminate this Agreement on a country-by-country basis for any reason by assigning the trademark in question to Licensee in the country of termination.

## ARTICLE VIII
### MISCELLANEOUS

8.1 Licensee agrees to carry out this Agreement as an independent contractor and not as an employee, servant or agent of or joint venturer with Licensor. Except as specifically provided herein, neither party shall have authority to bind or otherwise render the other party liable in any way, whether by agreement, contract, representation or order, written or oral, or by instrument or action of any kind. Unless otherwise specifically provided for herein the obligations undertaken by each party hereto and set forth in this Agreement shall be at the expense of the party which incurred the expense. All relationships entered into by Licensee shall be for its exclusive account and risk, and Licensee shall have no power to bind Licensor in any way with respect to third parties unless previously authorized in writing.



- 10 -

8.2  This Agreement shall not be assignable by Licensee, in whole or in part without the prior written consent of Licensor, not to be unreasonably withheld or delayed, except that Licensee may assign this Agreement in whole or part to an Affiliate without such consent.

8.3  All communications required or permitted to be given by one party to the other hereunder (collectively, "Notice") shall be in writing and (as elected by the party giving such Notice) (i) personally delivered, (ii) transmitted by postage pre-paid registered mail, return receipt requested, (iii) transmitted by telex with confirmed answer back (with postage pre-paid mail confirmation), or (iv) transmitted by telecopier (with postage pre-paid mail confirmation), to the party to which such Notice is being given at the address, (telex or telecopier) number set forth below:

(i)      If to Licensee:

         AMERICAN HOME PRODUCTS CORPORATION
         Five Giralda Farms
         Madison, New Jersey 07940

         Attention:  General Counsel

         Telecopier No.:  (201) 660-7156
         Telephone  No.:  (201) 660-6040

(ii)     If to Licensor:

         Ex-U.S.   F.Hoffmann-La Roche AG
                   Corporate Law
                   Grenzacherstr.124
                   CH-4002 Basel
                   Switzerland

                   Telecopier No.:  41-061-688-1396
                   Telephone No.:   41-061-688-5974



- 11 -

        U.S.        Hoffmann-La Roche Inc.
                    340 Kingsland Street
                    Nutley:  New Jersey 07110
                    Attention:  Corporate Secretary
                    Telecopier No.:  (201) 235-3500
                    Telephone  No.:  (201) 235-2165


        Except as otherwise specified herein, all Notice shall be
deemed to have been duly given on (i) the date of receipt if
delivered personally, (ii) fourteen (14) days after posting if
transmitted by mail, (iii) the date of transmission if transmitted
by telex or (iv) the date of transmission if transmitted by
telecopier, whichever shall first occur.  Either party hereto may
at any time give notice to the other party of a change of name
and/or address (including telephone, telex or telecopier number) to
which Notices shall be mailed or sent in accordance with the
foregoing.


        8.4  Any part or provision of this Agreement which may be held
for any reason to be illegal, invalid, unenforceable in or in
conflict  with  the  applicable  laws  or  regulations  of  any
jurisdiction shall be ineffective to the extent of such illegality,
invalidity, unenforceability or conflict, and shall be replaced
with a part of provision that accomplishes, to the extent possible,
the original purpose of such part or provision in a valid and
enforceable manner, without affecting, impairing or invalidating
the  remaining  provisions  in  any  other  jurisdiction,  which
provisions shall remain binding upon the parties hereto and in full
force and effect.


        8.5  The failure of a party at any time to require or enforce
the strict performance by the other party of any term or condition
of this Agreement shall not constitute a surrender or waiver of
that particular breach of failure, or of any subsequent breach or

- 12 -

failure by said other party with respect to any term or condition of this Agreement, or the waiver by a party of a breach or default committed by the other party with respect to any term or condition of this Agreement, and shall not to any extent prejudice or adversely effect the other party's rights, interest or remedies available or provided to it by law or otherwise which it may exercise or invoke with respect to that particular breach or failure or any subsequent breach or failure.

8.6  No right or remedy given to a party under this Agreement or by applicable law is intended to be exclusive of, or constitute a waiver of, any other right or remedy.  Each right or remedy may be pursued singly, concurrently, successively, or otherwise, at the sole discretion of either party.

8.7  This Agreement is deemed to be made, and the parties further agree, recognize and affirm that this Agreement is made, in the State of New York.  All incidents of this agreement shall be governed, construed and enforced in accordance with the laws of the State of New York.  The appropriate federal courts situated within the State of New York shall have exclusive jurisdiction over any dispute between the parties hereto arising out of this Agreement.

8.8  The provisions of this Agreement, including Exhibit 1 hereto, represent the entire understanding and agreement between the parties with respect to the subject matter hereof, and supersede all previous agreements, statements, representations, promises, warranties, covenants, undertakings or writing relating thereto, other than those contained herein.  Any changes in or amendments to the terms of this Agreement shall be in writing and



- 13 -

signed by duly authorized representatives of each of the parties hereto.

AMERICAN HOME PRODUCTS CORPORATION

By: _____

Title: Vice President

Date: 7/31/95

F.HOFFMANN-LA ROCHE AG

By: _____

Title: Attorney-IN-Fact

Date: 7/31/95

HOFFMANN-LA ROCHE INC.

By: _____

Title: VP

Date: 7/31/95



SCHEDULE A

<u>TRADEMARKS</u>

AUREO
AUREOMYCIN

AUREOMICINA
AUREOMIX
AUROFAC



**EXHIBIT 1**

**AGREEMENT**

AGREEMENT made as of the      day of      , 1995 by and between American Home Products Corporation, a corporation of Delaware with offices at Five Giralda Farms, Madison, New Jersey 07940 (together with its affiliates, hereafter collectively "AHP"), and Hoffmann-La Roche Inc. and F.Hoffmann-La Roche Ltd. (hereafter collectively "HLR").

**WITNESSETH**

WHEREAS, AHP, through its wholly-owned subsidiary, American Cyanamid Company (hereafter "ACC"), is using and has registered the marks AUREO, AUREOFORTE, AUREOMICINA, AUREOMIX, AUREOMYCIN, AUREOCORT, AUREODELF, and other AUREO-prefixed marks in the United States and other countries throughout the world, primarily as an antibiotic for use in humans and in animals and primarily in International trademark Class 5.

WHEREAS, pursuant to a separate agreement of purchase and sale AHP has or will be assigning the trademarks AUREO, AUREOMIX, AUREOMYCIN and AUREOMICINA and the respective registrations therefor in the United States and other countries throughout the world to HLR or its designee.

WHEREAS, the parties hereto are desirous of preventing any potential likelihood of confusion or conflict arising out of the use and/or maintenance of their respective marks and registrations as aforesaid by distinguishing their respective marks and goods.



NOW, **THEREFORE,** in consideration of the premises and the mutual covenants and agreements herein contained, the parties agree as follows:

1.    HLR recognizes AHP and ACC's prior exclusive rights in the marks AUREOFORTE, AUREOCORT, AUREODELF and any other remaining AUREO-prefixed marks and any and all registrations thereof in the United States and elsewhere throughout the world.

2.    AHP agrees to refrain from using the mark AUREO or any of its other aforesaid AUREO-prefixed marks (1) in connection with any area other than specialty health products and human pharmaceutical products, and (2) in connection with the medicated animal feed business. However, nothing in this agreement shall be construed to prohibit AHP from continuing to use the marks recited in Paragraph 1 hereof on and in connection with the goods in respect of which they are currently used.

3.    HLR may maintain the assigned registrations for AUREO, AUREOMIX, AUREOMYCIN and AUREOMICINA.  HLR agrees to use and apply for future registrations of the marks only in respect of medicated animal feed products.

4.    Each party recognizes the validity of any and all current and future registrations granted to the other for their respective marks and goods as described herein and will reasonably cooperate with and assist the other in enforcing its marks and registrations against third party infringers.

5.    Each party agrees to reasonably cooperate with the other and, upon request of the other, execute such documents necessary to demonstrate that such party has no objection and consents to the



use and/or registration by the other of its respective marks for the respective goods as described herein.

6. Each party warrants and represents that it has the right and authority to enter into this agreement without restriction.

7. This agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and shall bind and inure to the benefit of the parties and their respective successors, heirs, assigns, licensees and affiliates.


IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the above-written date.


AMERICAN HOME PRODUCTS CORPORATION

By: _____
       Name:
       Title:


F.HOFFMANN-LA ROCHE AG

By: _____
       Name:
       Title:


HOFFMANN-LA ROCHE INC.

By: _____
       Name:
       Title:

# Exhibit 2


Branded Products Division

Mary Elizabeth Brown
Director, Intellectual Property
One New England Avenue
Piscataway, NJ 08854
Direct Dial: 732.465.3749
Facsimile: 732.465.3640
Email: maryelizabeth.brown@alpharma.com

February 6, 2007

**VIA OVERNIGHT MAIL**

Bret I. Parker, Esq.
Chief Trademark and Copyright Counsel
  and Assistant General Counsel
Wyeth
5 Giralda Farms
Madison, New Jersey 07940

Re:    **TRADEMARK LICENSE AGREEMENT DATED JULY 31, 1995**

Dear Mr. Parker:

By way of introduction, I am Mary Elizabeth Brown, Director, Intellectual Property, for Alpharma Inc. ("Alpharma"). I am writing to you with respect to the July 31, 1995 Trademark License Agreement (the "Agreement") between Wyeth f/k/a American Home Products Corporation ("Licensee") and F. Hoffmann-La Roche AG and Hoffmann-La Roche Inc. (collectively "Licensor"). A copy of the Agreement is enclosed for your ready reference. Alpharma, as you may know, acquired certain assets of F. Hoffmann-La Roche Ltd. including, among other assets, the trademarks AUREOMYCIN, AUREO, AUREOMICINA, AUREOMIX and AUROFAC (hereinafter individually and collectively referred to as the "Trademarks") which are the subject of the 1995 Agreement.

I have recently learned that Wyeth's packing for AUREOMYCIN products does not appear to be in compliance with the Agreement. Specifically, paragraph 4.6 of the Agreement states in relevant part:

"Licensee shall state on the packing of the Products that the Trademark is owned by F. Hoffmann-La Roche Ltd., Basel, Switzerland for Products outside the U.S., or Hoffmann-La Roche, Inc. New Jersey for Products inside the U.S., and that the respective Trademark belongs to Licensor."

A representative example of Wyeth's AUREOMYCIN packing is enclosed but makes no reference to the Licensor, or its successor Alpharma. Having in essence stepped into the shoes of the Licensor, I request that Wyeth amend its packing to make clear that Alpharma is the owner of the Trademarks. Please confirm within fourteen (14) days from the date of this letter that Wyeth

Bret I. Parker, Esq.
February 6, 2007
Page 2

will undertake the requested amendment to its packing bearing the Trademarks and that it will
amend such packing within ninety (90) days from the date of this letter.

In addition, I ask that you kindly send me a representative specification and sample of the
Products, as defined in the Agreement, bearing each of the licensed Trademarks currently being
used by Wyeth for Alpharma to review pursuant to paragraph 3.2 of the Agreement.

Further, please be advised that all future notices and communications with respect to the
Agreement should be directed to my attention.   My contact information appears on this
letterhead.

If you wish to discuss this or any other matter relating to the Agreement, please do not
hesitate to contact me.  Otherwise, I look forward to receiving your response and the requested
samples.

Very truly yours,

Mary Elizabeth Brown
Director, Intellectual Property

MEB/cae
Enclosures

# Exhibit 3


**ALPHARMA**®
Branded Products Division

Mary Elizabeth Brown
Director, Intellectual Property
One New England Avenue
Piscataway, NJ 08854
Direct Dial: 732.465.3749
Facsimile: 732.465.3640
Email: maryelizabeth.brown@alpharma.com

February 23, 2007

**VIA OVERNIGHT MAIL**

Sudipta Rao, Esq.
Sr. Trademark & Copyright Attorney
Wyeth
5 Giralda Farms
Madison, New Jersey 07940

Dear Ms. Rao:

Thank you for your email of February 9, 2007 regarding Wyeth's use of the trademark "AUREOMYCIN."

By the terms of paragraph 4.5 of the Trademark License Agreement dated July 31, 1995 (the "Agreement"), we require that you immediately mark all packing of the products bearing the mark "AUREOMYCIN" with the following statement: "AUREOMYCIN is a registered trademark owned by Alpharma Inc. and used under license by Fort Dodge." We are also requiring that you recall all of the products covered by the Agreement that have been sold or distributed that do not contain our required ownership statement. Wyeth's failure to mark the packing is a material breach of the Agreement and, by the terms of paragraph 7.2(a), must be cured within ninety (90) days or we will have the option to terminate the Agreement. Please send us a sample of the new packing for each affected product which contains our required ownership statement as soon as possible.

We also request that you send us the parameters of the active pharmaceutical ingredient that shows the quality of tetracycline that you are selling under the mark "AUREOMYCIN."

Please do not hesitate to contact me if you have any questions.

Sincerely,

on behalf of

Mary Elizabeth Brown
Director, Intellectual Property

MEB/cae

FedEx | Ship Manager | Label 7912 3933 7071                                      Page 1 of 1

From:    Origin ID: ZRPA   (732)465-3639
Caryn Enoch
Alpharma
One New England Avenue

Piscataway, NJ 08854



Ship Date: 23FEB07
ActWgt: 1 LB
System#: 1517906/INET2600
Account#: S *********

**Delivery Address Bar Code**



| SHIP TO:   (732)465-3639        BILL SENDER |
| --- |

**Sudipta Rao, Esq.**
**Wyeth**
**Sr. Trademark & Copyright Attorney**
**5 Giralda Farms**
**Madison, NJ 07940**

Ref #
Invoice #
PO #
Dept #

---

**PRIORITY OVERNIGHT**                                      **MON**
                                                           Deliver By:
TRK#  **7912 3933 7071**   FORM   26FEB07
                           0201
                                              **EWR**   A1

**07940**   -NJ-US      **Z3 LKKA**



---

Shipping Label: Your shipment is complete

1.  Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2.  Fold the printed page along the horizontal line.
3.  Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# Exhibit 4



September 24, 2007

Brett I. Parker, Esq.
Chief Trademark and Assistant General Counsel
WYETH
Five Giralda Farms
Madison, New Jersey 07940

Re:    Trademark License Agreement - July 31, 1995

Dear Mr. Parker:

This is further to my letter of earlier this year concerning the July 31, 1995 Trademark License Agreement (Agreement) between Wyeth f/k/a American Home Products Corporation (Licensee) and F. Hoffmann-La Roche AG and Hoffmann-La Roche Inc. (collectively Licensor). Alpharma, as you know, acquired Hoffmann-La Roche, including among other assets, the trademarks AUEROMYCIN, AUREO, AUREOMICINA, AUREOMIX and AUROFAC (hereinafter individually and collective referred to as the "Trademarks") which are the subject of the Agreement.

Alpharma recently learned that Wyeth has filed applications to register and obtained registrations for certain Trademarks which are identified on Exhibit A attached hereto. Such filings and registrations violate of the terms and conditions of the Agreement.

Specifically, paragraph 4.3 of the Agreement states:

Licensee agrees not to claim or to assert any right of ownership in or to the Trademarks or the goodwill associated therewith and shall take no action which may destroy, damage or impair in any way the ownership or rights of Licensor in and to the Trademarks. Licensee shall not register anywhere in the world in its own name, or on behalf of any other person or entity, any trademark, trade dress, brands, labelling, designs or other indicia of ownership identical to, or confusingly similar to, the Trademarks, and shall not associate the trademarks with any articles other than the Products and shall, at the request and expense of Licensor do all such acts and things and execute all such documents as Licensor shall in its reasonable discretion consider necessary or proper to register the Trademarks in any country. Should usage of the Trademarks in any country vest title thereto in Licensee, then

**ALPHARMA**

Mr. Brett I. Parker
Page 2

Licensee shall at Licensor's expense immediately assign and transfer such title to Licensor. (emphasis added)

Wyeth's applications to register and registrations for the Trademarks are material breaches of the Agreement. In view of the foregoing, I request on behalf of Alpharma that Wyeth assign the applications and registrations on Exhibit A over to Alpharma within ten (10) days from the date of this letter by executing and returning to me via email and Federal Express courier the Assignments attached hereto as Exhibit B.

If you wish to discuss this or any other matter relating to the Agreement, please do not hesitate to call me. Otherwise, I look forward to receiving the fully executed Assignments.

Very truly yours,

Mary Elizabeth Mauro J.D.
Director Intellectual Property

Encs.

## Exhibit A:
## Schedule of Asian Trademarks in Name of
## Wyeth Holdings Corporation

| Country | Mark | Class(es) and Goods | Application No. and Filing Date | Registration No. and Registration Date | Owner | Status |
|---------|------|---------------------|-------------------------------|----------------------------------------|-------|--------|
| India | AUROFAC | 5 Int.: Veterinary products and preparations. | 1388416 September 30, 2005 | N/A | Wyeth Holdings Corporation | Pending. |
| Taiwan | AUREO S | 5 Int.: Feed additives for medical use and vitamins for animal use. | N/A May 2, 2003 | 1084290 February 1, 2004 | Wyeth Holdings Corporation | Registered. |
| Taiwan | AUREO S | 12 Nat.: Medicines for animal use. | N/A March 1, 1969 | 39476 March 11, 1970 | Wyeth Holdings Corporation | Registered. |
| Taiwan | AUREO S | 31 Int.: Feeds and feed additives not for medical use. | N/A May 2, 2003 | 1083316 January 16, 2004 | Wyeth Holdings Corporation | Registered. |
| Taiwan | AUREO S.P | 5 Int.: Feed additives for medical use and antibiotics for animal use. | N/A May 2, 2003 | 1084284 February 1, 2004 | Wyeth Holdings Corporation | Registered. |
| Taiwan | AUREO S.P | 31 Int.: Feeds and feed additives not for medical use. | N/A May 2, 2003 | 1082314 January 16, 2004 | Wyeth Holdings Corporation | Registered. |
| Taiwan | AUREO S.P 250 & Design | 5 Int.: Feed additives for medical use and antibiotics for animal use. | N/A May 2, 2003 | 1088410 March 1, 2004 | Wyeth Holdings Corporation | Registered. |
| Taiwan | AUREO S.P 250 & Design | 31 Int.: Feeds and feed additives not for medical use. | N/A May 2, 2003 | 1084292 February 1, 2004 | Wyeth Holdings Corporation | Registered. |

NY02 #597126

## Exhibit A:
## Schedule of Asian Trademarks in Name of
## Wyeth Holdings Corporation

| Country | Mark | Description | | | Number | | Owner | Status |
|---|---|---|---|---|---|---|---|---|
| Taiwan | AUREO S.P. 500 | 5 Int: Feed additives for medical use and antibiotics for animal use. | N/A | May 2, 2003 | 1084286 | February 1, 2004 | Wyeth Holdings Corporation | Registered. |
| Taiwan | AUREO S.P. 500 | 31 Int: Feeds and feed additives not for medical use. | N/A | May 2, 2003 | 1084293 | February 1, 2004 | Wyeth Holdings Corporation | Registered. |
| Taiwan | AUREO STP 500 | 5 Int: Feed additives for medical use. | N/A | May 2, 2003 | 1084294 | February 1, 2004 | Wyeth Holdings Corporation | Registered. |
| Taiwan | AUREO STP 500 | 31 Int: Feeds and feed additives not for medical use. | N/A | May 2, 2003 | 1084287 | February 1, 2004 | Wyeth Holdings Corporation | Registered. |
| Taiwan | AUREOMYCIN | 12 Nat: Western medicine and ophthalmic ointment. | N/A | February 27, 1953 | 2058 | February 27, 1954 | Wyeth Holdings Corporation | Registered. |
| Taiwan | AUROFAC | 12 Nat: Veterinary medicines, vitamins for animal use. | N/A | December 15, 1953 | 2071 | November 11, 1954 | Wyeth Holdings Corporation | Registered. |
| Taiwan | AUROFAC | 48 Nat: Feeds, feed additives, medicated supplemental feeds. | N/A | February 6, 1967 | 28208 | October 1, 1967 | Wyeth Holdings Corporation | Registered. |

2 of 2

Exhibit B:

1) Deed of Assignment

2) Form TM-48

3) Affidavit- AUROFAC  Registration No. 1388416

4) Assignment

5) Power of Attorney

DEED OF ASSIGNMENT

**THE DEED OF ASSIGNMENT** made on this _____ day of _____, 2007
by

Wyeth Holdings Corporation of Five Giralda Farms, Madison, New Jersey 07940,
USA (hereinafter referred to as the "Assignor")

in favour of:

Alpharma Inc. of 440 Route 22, Bridgewater, New Jersey 08807, USA (hereinafter
referred to as the "Assignee").

**WHEREAS**

The Assignor is the exclusive owner and proprietor in India, under the Trade
Marks Act, 1999 of the following trade mark(s), brief particulars of which are
given below:-

| Trade Mark | Number(s) | Class |
|------------|-----------|-------|
| AUROFAC | 1388416 | 5 |

**NOW THEREFORE, IN CONSIDERATION OF THE PREMISES AND OF
THE MUTUAL COVENANTS AND PROMISES OF THE PARTIES HERETO,
IT IS HEREBY AGREED**

1.   For and in consideration of a sum of US $10.00 paid to the Assignor by the
     Assignee, the receipt of which the Assignor doth hereby acknowledge, the
     Assignor does hereby sell, assign and transfer unto the Assignee, its
     successors and assigns, its entire right, title and interest in and to the said
     trade mark together with all the goodwill connected with and symbolized
     by the said trade marks, the same to be held and enjoyed by the Assignee.

NY02:597245.1

**IN WITNESS WHEREOF** the parties hereto have executed these presents the day and the year first hereinabove written.

_____
(Company Seal)


By _____
Name:
Title :
Wyeth Holdings Corporation


_____
(Company Seal)


By _____
Name:
Title:
Alpharma Inc.


Witnesses:-


1.    _____
      Name:


2.    _____
      Name:


Sworn to and subscribed before me this_____ day of _____, 2007.


_____
Notary Public

FORM TM-48

THE TRADE MARKS ACT, 1999
Form of Authorisation of Agent
(Section 145; Rule 21)

Agent Code No. 3701
Proprietor's Code No. :

We, **Alpharma Inc.** of 440 Route 22, Bridgewater, New Jersey 08807, USA

hereby authorize Jyoti Sagar, Rajendra Kumar, Kenneth D. Benjamin, D. Calab Gabriel, Rajeshwari H., Vivek Dhokalia, Latha R. Nair, Punita Bhargava, Ravi Bhola, Priya Rao, Cherry Thong, Divya Balasundaram, Ashish Marbaniang, Navpreet Kaur Panjrath, Mekhla Basu, Daksh Kumar, Ashish Kanta Singh Advocates, and Nidhi Rastogi, Trade Marks Agent, all of **K & S PARTNERS, 84-C, C-6 Lane, Sainik Farms, New Delhi 110 062,** jointly and severally to act as our agent(s) for all matters relating to the filing and prosecution of trade mark/service mark/certification mark/collective mark applications, oppositions, registered users, renewals, change of name / address, assignments, rectification, review,

And all proceedings before the Registrar of Trade Marks or the Government of India and all acts, deeds and things (including the appointment of a substitute or substitutes) as the said Agent(s) may deem necessary or expedient in connection therewith or incidental thereto may be sent to such Agent(s) at New Delhi.

We hereby confirm and ratify all previous acts, if any, done by the said Agent(s) in respect of the matters aforesaid.

We also authorise the aforesaid Agent(s), jointly and severally, to complete Form TM-50, if this is required, requesting the entry of an address for service as part of our registration obtained under the above authorisation.

We hereby revoke all previous authorisations, if any, in respect of the matter aforesaid.

All communications relating to this application may be sent to the following address in India:-

K & S PARTNERS, 84-C, C-6 Lane, Sainik Farms, New Delhi 110 062

Dated this the _____ day of _____, 2007.

Name: _____

Title:

To,
The Registrar of Trade Marks
The Office of the Trade Marks Registry
At:  NEW DELHI/MUMBAI/CHENNAI/KOLKATA/AHMEDABAD

No Notarization or Legalization Needed

NY02:597257.1

## AFFIDAVIT

I, _____ being duly sworn, depose and say:

I.      I, _____ hold the position of _____, with Wyeth Holdings Corporation.

2.      It is my responsibility to be completely familiar with all uses made by Wyeth Holdings Corporation of its trade mark. Consequently, I have knowledge of the history and background of the following trade mark.

| Trade Mark | Registration No. | Class |
|------------|------------------|-------|
| AUROFAC | 1388416 | 5 |

3.      I am not aware of any legal proceedings pending in any court of law or tribunal in India in respect of the trade mark mentioned in paragraph 2 above.

4.      All Statements made herein are of my own personal knowledge and are true. All statements made on information and belief are believed to be true.

By _____
Name:
Title:

Sworn to and subscribed before me this_____ day of _____, 2007.

_____
Notary Public

NY02:597261.1

## A S S I G N M E N T

**WHEREAS** Wyeth Holdings Corporation, a corporation organized and existing under the laws of the State of Maine, USA, located at Five Giralda Farms, Madison, New Jersey 07940, USA (hereinafter called "the Assignor"), is the proprietor of the trademark(s) registered in the Republic of China (Taiwan) as per the Schedule attached hereto (hereinafter called "the Trademark(s)");

**WHEREAS** Alpharma Inc., a corporation organized and existing under the laws of the State of Delaware, USA, located at 440 Route 22, Bridgewater, New Jersey 08807, USA (hereinafter called "the Assignee"), is desirous of acquiring the right and interest to the Trademark(s) in the territory of the Republic of China (Taiwan).

**NOW, THEREFORE, TO ALL WHOM IT MAY CONCERN**, let it be known, that for and in consideration of the sum of Ten Dollars, the receipt of which is hereby acknowledged, and other good and valuable considerations, the Assignor has sold, assigned and transferred the entire right, title and, interest in and to the Trademark(s) together with the goodwill connected therewith in the territory of the Republic of China (Taiwan) unto the Assignee, its successors and assigns.

**IN WITNESS WHEREOF**, the Assignor has hereunto authorized the undersigned to affix the corporate seal and sign this instrument on its behalf this _____ day of _____, 2007.

(CORPORATE SEAL)

By _____
   Name:
   Title:

**IN WITNESS WHEREOF**, the Assignee has hereunto authorized the undersigned to affix the corporate seal and sign this instrument on its behalf this _____ day of _____, 2007.

(CORPORATE SEAL)

By _____
   Name:
   Title:

## Schedule - TAIWAN

| Trademark | Reg. No. |
|---|---|
| AUREO S | 1084290 |
| AUREO S | 39476 |
| AUREO S | 1082316 |
| AUREO S.P | 1084284 |
| AUREO S.P | 1082314 |
| AUREO S.P 250 & Design | 1088410 |
| AUREO S.P 250 & Design | 1084292 |
| AUREO S.P. 500 | 1084286 |
| AUREO S.P. 500 | 1084293 |
| AUREO STP 500 | 1084294 |
| AUREO STP 500 | 1084287 |
| AUREOMYCIN | 2058 |
| AUROFAC | 2071 |
| AUROFAC | 28208 |

TAIWAN

TRADEMARK
APPLICATION
(CORPORATE)

## POWER OF ATTORNEY

We, (a) **Alpharma Inc.** registered under the laws of (b) **the State of Delaware,** USA, having a principal place of business at (c) **440 Route 22, Bridgewater, New Jersey 08807, USA**

hereby constitute and appoint Messrs. C. V. Chen, Kwan-Tao Li and Cathy C. W. Ting of LEE AND LI, Attorneys-at-law, at 7th Fl., Formosa Plastics Building, 201 Tun Hua North Road, Taipei, Taiwan, Republic of China, jointly and severally, to be our attorneys in connection with all matters concerning trademark/certification mark/collective membership mark/collective trademark in the Republic of China (Taiwan), with full power of substitution and revocation, to

(1)   Apply for new registrations;
(2)   Apply for renewal of registrations;
(3)   Apply for recordal of assignments;
(4)   Apply for change of name;
(5)   Apply for recordal of amendments;
(6)   Apply for dividing trademark applications/registrations;
(7)   Apply for recordal of pledge;
(8)   Apply for recordal of license and/or sublicense;
(9)   Apply for issuance of duplicate/certified documents;
(10)  Apply for change of attorney;
(11)  Institute and/or defend opposition proceedings;
(12)  Institute and/or defend invalidation proceedings;
(13)  Institute and/or defend revocation proceedings;
(14)  Take any and/or all other necessary action or actions to defend or voluntarily cancel or withdraw registrations, applications and/or proceedings as the case may be; and
(15)  Receive service of processes.

before the Intellectual Property Office, to institute and withdraw appeals before the Ministry of Economic Affairs, and generally to represent us and to transact all business on our behalf in the registration and protection of trademark/certification mark/collective membership mark/collective trademark in the Republic of China (Taiwan).

This POWER OF ATTORNEY is duly executed by our authorized representative on this _____ day of _____, 2007.

(a) **ALPHARMA INC.**

By_____
(d) Name:

(e)_____
Title:

No Notarization or Legalization Needed

TAIWAN

TRADEMARK
APPLICATION
(CORPORATE)

Notes:

1.  For blanks (a), (b), (c), (d) and (e), please insert:
    (a)  name of the applicant corporation;
    (b)  name of State and/or Country;
    (c)  full address;
    (d)  name of the executing officer; and
    (e)  title of the executing officer.

2.  Neither legalization nor notarization is required.

## AFFIDAVIT

I, _____ being duly sworn, depose and say:

I.      I, _____ hold the position of _____, with
        Alpharma Inc.

2.      It is my responsibility to be completely familiar with all uses made by

        Alpharma Inc. of its trade mark.  Consequently, I have knowledge of

        the history and background of the following trade mark.

        | Trade Mark | Registration No. | Class |
        | --- | --- | --- |
        | AUROFAC | 1388416 | 5 |

3.      I am not aware of any legal proceedings pending in any court of law or

        tribunal in India in respect of the trade mark mentioned in paragraph 2

        above.

4.      All Statements made herein are of my own personal knowledge and

        are true.  All statements made on information and belief are believed

        to be true.

By _____
Name:
Title:

Sworn to and subscribed before me this_____ day of _____, 2007.

_____

Notary Public

NY02:597263.1

# Exhibit 5

Five Giralda Farms
Madison, NJ 07940

**Bret I. Parker**
Chief Trademark & Copyright Counsel
and Assistant General Counsel
973 660 6880 tel
973 660 7978 fax
parkerb2@wyeth.com

# Wyeth

BY FAX: 908-566-4131
October 4, 2007

Mary Elizabeth Mauro
Director Intellectual Property
Alpharma
440 Route 22
Bridgewater, NJ 08807

Dear Mary Elizabeth,

Thank you for your September 24, 2007 letter. As you know, there were
multiple discussions and various correspondence earlier this year between Wyeth
and Alpharma concerning the rights in India and Taiwan at which time we
respectfully disagreed with Alpharma's position in this matter. For example, my
May 23, 2007 email to Robert Wrobel specifically disputed Alpharma's
interpretation of the 1995 Trademark License and the Asset Purchase Agreement.

As a result, I was surprised by the letter and the claim that Alpharma "recently
learned" of the applications and registrations listed in Exhibit A of your letter,
especially given these prior discussions and the fact that the applications and
registrations go back many years (as does our use of the marks at issue
subsequent to the prior agreements).

Needless to say, we disagree that there has been a material breach of the relevant
agreements or that Wyeth is required to assign any trademark rights.
Nevertheless, I left you two voicemail messages and remain open to discussing
this issue in more detail.

Thanks and regards,

Bret Parker

Bret I. Parker
Chief Trademark & Copyright Counsel
and Assistant General Counsel

Wyeth Pharmaceuticals
Wyeth Consumer Healthcare
Fort Dodge Animal Health

TOTAL P.001

# Exhibit 6

# DORSEY

SANDRA EDELMAN
Partner
(212) 415-9269
FAX (212) 953-7201
edelman.sandra@dorsey.com

March 11, 2008

**VIA E-MAIL & U.S. POSTAL SERVICE**

Mike Stenglein, Esq.
Dewey & LeBoeuf LLP
401 Congress Avenue
Suite 3200
Austin, Texas  78701-2478

Re:    <u>Aureomycin Trademark Issues</u>

Dear Mike:

Following up on our phone conversation on March 6, I am writing to respond more formally to the issues you raised in your letter of February 25.

Taking the issues in the order in which you address them in your letter, I confirm that the trademark ownership statement that appears on Wyeth's modified Aureomycin packaging conforms to the statement, including the identification of the licensor as just "Alpharma," that was provided in an email from Mary Elizabeth Brown to Bret Parker dated March 28, 2007. Wyeth will assume that statement is acceptable to Alpharma going forward unless it is advised otherwise.

I also want to clarify that prior to receiving your February 20 letter, Wyeth had ceased the manufacturing of packaging bearing the old labeling, not the distribution of product inventory bearing that prior labeling. As I indicated in my letter of February 20, products bearing the new labeling attached to that letter will begin appearing in the marketplace in the next few weeks and, depending on the sales volume for particular products in the line, other products bearing the new labeling will appear in the coming months.

Further, I confirm that Wyeth searched its internal database for active registrations and applications and located no other registrations of the Trademarks other than in India, Taiwan and Portugal, previously identified to Alpharma, and that Wyeth has agreed to assign the Portugal Trademarks to Alpharma.

With respect to the India and Taiwan registrations, Wyeth has attached to this letter a copy of the text of the Asset Purchase Agreement (excluding schedules), with limited redactions not relevant to the identification of trademarks assigned in Section and Schedule 3.16. As you will see, Section 3.16 defines the purchased assets as those set forth in Schedule 3.16, which confirms Wyeth's position that the India and Taiwan registrations (and associated business) were not transferred as part of the Agreement.

DORSEY & WHITNEY LLP • WWW.DORSEY.COM • **T** 212.415.9200 • **F** 212.953.7201
250 PARK AVENUE • NEW YORK, NEW YORK 10177-1500

USA  CANADA  EUROPE  ASIA

**DORSEY**

Mike Stenglein, Esq.
March 11, 2008
Page 2

Finally with regard to Canada, I confirm that Wyeth is indeed using the Trademarks in Canada.  While it is a moot point, we do not necessarily agree that Section 7.1 of the License Agreement provides for termination of the Agreement country-by-country based on lack of use in a particular country of the worldwide Territory.  We can also advise that Wyeth is in the process of conforming the labeling of the Canadian products to contain the statement of ownership that was adopted for use in the United States.

If you have any questions or concerns regarding the above, please give me a call to discuss at your convenience.

Sincerely,

Sandra Edelman

SE/tt
Attachment

# Exhibit 7

# KING & SPALDING

King & Spalding LLP
106 East Sixth Street, Suite 900
Austin, Texas 78701
www.kslaw.com

Mike Stenglein
Partner
Direct Dial: 512-457-2003
Direct Fax: 512-457-2100
Mobile: 512-423-3092
mstenglein@kslaw.com

July 11, 2008

*Via Facsimile/Telecopier and*
*Certified Mail, RRR*
Wyeth
f/k/a American Home Products Corporation
Attention: General Counsel
Five Giralda Farms
Madison, New Jersey 07940

*Via Facsimile/Telecopier and*
*Certified Mail, RRR*
Bret I. Parker, Esq.
Chief Trademark and Copyright Counsel
Wyeth
Five Giralda Farms
Madison, New Jersey 07940

*Via Facsimile/Telecopier and*
*Certified Mail, RRR*
Sandra Edelman
Dorsey & Whitney LLP
250 Park Avenue
New York, NY 10177-1500

Re:    Termination of Trademark License Agreement Dated July 31, 1995

Dear Counsel:

As you know, King & Spalding LLP ("King & Spalding") represents Alpharma, Inc. ("Alpharma") in relation to the Trademark License Agreement dated July 31, 1995 (the "License Agreement") between Alpharma, as successor-in-interest to F. Hoffmann-La Roche AG and Hoffmann-La Roche Inc., and Wyeth, formerly known as American Home Products Corporation. A copy of the License Agreement is attached as Exhibit 1 for your reference.

Alpharma sent several letters notifying Wyeth of its material breaches in accordance with Paragraphs 7.2(a) and 8.3 of the License Agreement. Wyeth failed to cure these breaches within 90 days after receiving written notice from Alpharma. Therefore, pursuant to Paragraph 7.2(a), <u>Alpharma hereby terminates the License Agreement, effective immediately</u>.

July 11, 2008
Page 2

Further, pursuant to Paragraph 7.3 of the License Agreement Wyeth must, effective immediately, cease and discontinue all use of the following trademarks:    AUREO, AUREOMYCIN, AUREOMIX, AUROFAC and AUREOMICINA.

Alpharma's first two letters, dated February 6, 2007 and February 23, 2007, respectively, served as written notice that Wyeth, through its Fort Dodge Animal Health Division, had materially breached Paragraph 4.6 of the License Agreement by distributing and selling "Products"[1] bearing the licensed AUREOMYCIN trademark without a statement of ownership by the Licensor.  The February 6, 2007 letter (without enclosures) and February 23, 2007 letter are attached as Exhibits 2 and 3, respectively.

In its February 6, 2007 letter, Alpharma demanded that Wyeth place Alpharma's ownership statement on all Product packaging bearing the AUREOMYCIN trademark, as required by the License Agreement.  In its February 23, 2007 letter, Alpharma demanded that Wyeth immediately mark all packaging of Products bearing the AUREOMYCIN trademark with the following statement:  "AUREOMYCIN is a registered trademark owned by Alpharma Inc. and used under license by Fort Dodge."  Alpharma further demanded that Wyeth recall all of the Products sold or distributed without Alpharma's ownership statement.  Alpharma notified Wyeth that its failure to mark the packaging in accordance with Paragraph 4.6 was a material breach of the License Agreement, which, if not cured within 90 days, would give Alpharma the option to terminate the License Agreement.  Although Wyeth represents that it has created new packaging containing proper attribution and ownership language, none of this revised packaging has been distributed into the market, even though this issue was raised with Wyeth more than 15 months ago.  Wyeth's failure to cure is a material breach of the License Agreement.

In its September 24, 2007 letter, Alpharma notified Wyeth that it had materially breached Paragraph 4.3 of the License Agreement by filing applications to register and obtaining registrations in Taiwan and India for marks identical to or confusingly similar to certain of the trademarks licensed by the License Agreement.[2]  A copy of the September 24, 2007 letter is attached as Exhibit 4. Alpharma demanded that Wyeth assign the specified applications and registrations in Taiwan and India to Alpharma, and attached assignments for Wyeth to execute and return.  Wyeth has refused to do so.  This action constitutes a material breach of the License Agreement.

In its February 12, 2008 letter, Alpharma notified Wyeth that it had also materially breached Paragraph 4.3 of the License Agreement by filing an application to register and obtaining registrations in Portugal for AUREOMICINA, a trademark governed by the License Agreement.  In its March 11, 2008 letter, Wyeth "agreed to assign the Portugal trademarks to Alpharma," but has failed to do so.  A copy of the March 11, 2008 letter is

---

[1] The term "Products" as used in this letter refers to "Products" as defined by Paragraph 1.3 of the License Agreement.

[2] The trademarks licensed by the License Agreement are AUREO, AUREOMYCIN, AUREOMIX, AUROFAC and AUREOMICINA.

July 11, 2008
Page 3

attached as Exhibit 5. Wyeth has not provided Alpharma with such an assignment and, as a result, has materially breached the License Agreement.

Wyeth failed to cure its material breaches of Paragraphs 4.6 and 4.3 of the License Agreement within 90 days after Alpharma provided it with written notification of said breaches. As a result, as stated above, Alpharma terminates the License Agreement, effective immediately, pursuant to paragraph 7.3 of the License Agreement.

Finally, Wyeth also continues to infringe Alpharma's A® trademark. As you know, Alpharma is the exclusive owner in the United States of Registration No. 0809161 for the A® trademark in connection with antibiotic preparation for use in animal and poultry feeds in the United States. Alpharma did not license the A® trademark to Wyeth through the License Agreement, and has not otherwise authorized or consented to Wyeth's use of the A® trademark. Nevertheless, Wyeth continues to use the A® trademark on numerous of its packaging. In your letter dated March 11, 2008, you stated that "products bearing the new labeling … will begin appearing in the market place in the next few weeks and, depending on sales volume … in the coming months." *See* Ex. 5. Although acceptable when it appeared this process would be complete on a timely basis, it is no longer acceptable given that Wyeth is unable to provide Alpharma with a timely date certain as to when the offending packaging will be fully removed from the marketplace. As a result, Alpharma demands that Wyeth cease and desist its violations of Alpharma's A® trademark and immediately remove all packaging containing the A® trademark from the marketplace.

As a result of Wyeth's breaches of the License Agreement and infringement of Alpharma's A® trademark, Alpharma reserves its right to pursue all available legal remedies, including filing suit to recover its damages and costs incurred to date.

You may contact me at 512-457-2003 should you have any questions.

Very truly yours,

Mike Stenglein

MS/jj
Attachments

# Exhibit 8

# United States Patent Office

**809,161**
Registered May 31, 1966

## PRINCIPAL REGISTER
### Trademark

Ser. No. 215,376, filed Mar. 30, 1965



American Cyanamid Company (Maine corporation)
Berdan Ave.
Wayne, N.J.

For: ANTIBIOTIC PREPARATION FOR USE IN ANIMAL AND POULTRY FEEDS, in CLASS 18.
First use Dec. 29, 1964; in commerce Dec. 29, 1964.



**United States Patent and Trademark Office**

Home Site Index Search FAQ Glossary Guides Contacts eBusiness eBiz alerts News Help

## Trademarks > Trademark Electronic Search System (TESS)

TESS was last updated on Thu Jan 3 04:04:17 EST 2008

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | A |
| **Goods and Services** | IC 005. US 018. G & S: ANTIBIOTIC PREPARATION FOR USE IN ANIMAL AND POULTRY FEEDS. FIRST USE: 19641229. FIRST USE IN COMMERCE: 19641229 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 26.19.25 - Geometric solids other than spheres, cylinders, cones, cube, prisms or pyramids |
| **Serial Number** | 72215376 |
| **Filing Date** | March 30, 1965 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Registration Number** | 0809161 |
| **Registration Date** | May 31, 1966 |
| **Owner** | (REGISTRANT) AMERICAN CYANAMID COMPNAY CORPORATION MAINE BERDAN AVENUE WAYNE NEW JERSEY |
| | (LAST LISTED OWNER) ALPHARMA INC. CORPORATION DELAWARE 440 Route 22 East Bridgewater NEW JERSEY 08807 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Maury M. Tepper, III |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECTION 8(10-YR) 20060819. |
| **Renewal** | 2ND RENEWAL 20060819 |
| **Live/Dead Indicator** | LIVE |

# Exhibit 9

"Sudipta Rao" <raos@wyeth.com>

02/09/2007 03:45 PM

To <maryelizabeth.brown@alpharma.com>

cc "C.T. Newsum" <ctnewsum@fdah.com>, "Bret I. Parker" <PARKERB2@wyeth.com>

Subjec Trademark License Agreement Dated July 31, 1995
t

**WITHOUT PREJUDICE**
Alpharma
Mary Elizabeth Brown
Director, Intellectual Property

Dear Ms. Brown -

I am writing to follow-up on your letter addressed to Bret I. Parker, dated February 6, 2007. Further to my voice message of February 7, 2007, we understand Alpharma seeks compliance with the terms in paragraph 4.6 of the Trademark License Agreement ("Agreement") between AHP and F. Hoffmann-La Roche and has requested representative specification and sample of the Products pursuant to paragraph 3.2. As indicated in my voice message, we are reviewing this matter with our business and will get back to you with the results of our review of the product labels for the marks: AUREOMYCIN, AUREO, AUREOMICINA, AUREOMIX and AUROFAC.

To the extent we will need to amend our product labels to comply with the attribution requirement, please provide us with the exact text Alpharma would like on these labels. Please also advise us exactly what you require in terms of the "representative specification and sample of the Products" mentioned in your letter. Thank you.

Best regards,
Sudipta

Sudipta Rao
Sr. Trademark & Copyright Attorney
Wyeth
5 Giralda Farms
Madison, NJ 07940
P (973) 660-7697
F (973) 660-7978
raos@wyeth.com

# Exhibit 10



060997
EXP 8-09

# Aureomycin®
## CHLORTETRACYCLINE
Soluble Powder
## CONCENTRATE
Antibiotic



## For Veterinary Use in Drinking Water

Chlortetracycline hydrochloride 64 g per pound
This packet contains 25.6 g chlortetracycline HCl and will make:
256 gallons containing 100 mg Aureomycin chlortetracycline HCl per gallon
128 gallons containing 200 mg Aureomycin chlortetracycline HCl per gallon
64 gallons containing 400 mg Aureomycin chlortetracycline HCl per gallon
25.6 gallons containing 1000 mg Aureomycin chlortetracycline HCl per gallon

Store at controlled room temperature
15° to 30°C (59° to 86°F).

## Net Wt: 6.4 Oz (181.4 g)

TO OPEN CUT HERE



# Exhibit 11

# Aureomycin®

## 50 Granular





### Chlortetracycline
### Type A Medicated Article

**See mixing directions, claims, cautions
and warnings on back**

**Net wt 50 LB (22.68 kg)**

**ALPHARMA.**

### Aureomycin®
#### 50 Granular



# Aureomycin®

## 90 Granular





### Chlortetracycline
### Type A Medicated Article

**See mixing directions, claims, cautions and warnings on back**

**Net wt 50 LB (22.68 kg)**

 **ALPHARMA.**

### Aureomycin®
#### 90 Granular

# Aureomycin®

## 100 Granular





### Chlortetracycline
### Type A Medicated Article

**See mixing directions, claims, cautions
and warnings on back**

### Net wt 50 LB (22.68 kg)

**ALPHARMA.**